UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                  :
MARVIN ESTUARDO XOL-MAAS,                          :
                                                  :
                              Plaintiff,          :        26-CV-00025 (JAV)
                                                  :
              -v-                                 :        <u>OPINION AND ORDER</u>
                                                  :
LADEON FRANCIS, et al.,                            :
                                                  :
                              Defendant.          :
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Before the Court is a petition for the writ of habeas corpus pursuant to 28

U.S.C. § 2241, ECF No. 1 ("Petition" or "Pet."), alleging that Petitioner Marvin

Estuardo Xol-Maas has been unlawfully detained by United States Immigration

and Customs Enforcement ("ICE") and seeking as relief his release from detention.

For the reasons that follow, the Petition is GRANTED.

## BACKGROUND

### A.    Special Immigrant Juvenile Status

Congress established Special Immigrant Juvenile Status ("SIJ status" or

"SIJS") in 1990 as part of the Immigration and Nationality Act ("INA") to provide

immigration relief for "foreign-born children living in the United States who have

been abused, neglected, abandoned, or similarly mistreated by a parent and for

whom a state or administrative court has determined it would not be in their best

interest to be returned to their home country or prior country of residence." *A.C.R.*

*v. Noem*, 25-CV-3962 (EK)(TAM), 2025 WL 3228840, at *1 (S.D.N.Y. Nov. 19, 2025)

(cleaned up), *reconsideration denied*, 2026 WL 102611 (E.D.N.Y. Jan. 14, 2026); *see* 8 U.S.C. § 1101(a)(27)(J).

Applicants receive SIJ status "only after satisfying a set of rigorous, congressionally defined eligibility criteria, including that a juvenile court find it would not be in the child's best interest to return to her country of last habitual residence and that the child is dependent on the court or placed in the custody of the state or someone appointed by the state." *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 163 (3d Cir. 2018) (citing 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c)). "The child must also receive approval from USCIS and the consent of the Secretary of Homeland Security to obtain the status." *Id.* (citing 8 U.S.C. § 1101(a)(27)(J); Memorandum from Donald Neufeld, Acting Assoc. Dir., Domestic Operations & Pearl Chang, Acting Chief, Office of Policy & Strategy, USCIS, *Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions* 3 (Mar. 24, 2009), https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Mem oranda/2009/TVPRA_SIJ.pdf [hereinafter USCIS Memorandum] (citing H.R. Rep. No. 105-405, at 130 (1997) (Conf. Rep.)).

The statute defines an SIJ as a minor "who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United

States, and whose reunification with [one] or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." 8 U.S.C. § 1101(a)(27)(J)(i); *see also* 8 C.F.R. § 204.11(c). A successful applicant for SIJS is thus legally deemed a "ward of the United States with the approval of both state and federal authorities." *Osorio-Martinez*, 893 F.3d at 168.

Congress has conferred upon SIJ designees a number of benefits. Recipients are exempted from certain grounds of inadmissibility, gain a pathway to lawful permanent resident ("LPR") status, and have access to both federally funded educational programming and preferential status when seeking employment-based visas. *See* 8 U.S.C. §§ 1232(d)(4)(A), 1153(b)(4).

Section 153 of the 1990 Act provides that certain inadmissibility grounds "shall not apply to a special immigrant described in section 101(a)(27)(J) based upon circumstances that exist before the date the alien was provided such special immigrant status." Immigration Act of 1990, Pub. L. No. 101-649, November 29, 1990, 104 Stat. 4978. As codified at 8 U.S.C. § 1255(h)(2), this provision includes Section 1182(a)(6)(A)—inadmissibility for lack of admission, parole, or arrival at designated point of entry—among the prior grounds for deportation that no longer apply to an SIJS beneficiary. 8 U.S.C. § 1255(h)(2).

SIJ status also confers eligibility, and the right to apply, for adjustment of status to that of lawful permanent residents while within the United States. *See* 8 U.S.C. § 1255(a), (h)(1). Indeed, SIJ beneficiaries are explicitly "deemed . . . to have

been paroled into the United States" for the purpose of this adjustment.  8 U.S.C. § 1255(h)(1).  Crucially, however, this provision requires that an immigrant visa be "immediately available" at the time of filing and the applicant to be "physically present in the United States."  8 U.S.C. § 1255.

Congress has, however, set various limits on the number of visas that may be made available, *see* 8 U.S.C. §§ 1151, 1153, resulting in a waiting list when demand for visas exceeds supply, *see* 8 C.F.R. § 245.1(g)(1).  As of March 2025, more than 150,000 individuals had received SIJS classification but were unable to apply for adjustment of status due to a dearth of visas.  *See A.C.R. v. Noem*, 2025 WL 3228840, at *2.  Only SIJ recipients who applied for status before September 1, 2020, over five years ago, are presently considered "current" for visa application purposes.  ECF No. 9 ("Dawson Decl."), ¶ 13.

## B.    Deferred Action

Deferred action is "an act of administrative convenience to the government that gives some cases lower priority" for enforcement.  8 C.F.R. § 274a.12(c)(14).  It is an exercise "of enforcement discretion not to pursue the removal of certain aliens for a limited period in the interest of ordering enforcement priorities in light of limitations on available resources, taking into account humanitarian considerations and administrative convenience."  8 C.F.R. § 236.21(c)(1).

Because of the long backlog in visa availability, U.S. Citizenship and Immigration Services ("USCIS") introduced a deferred-action program for

4

individuals with SIJS in 2022 ("SIJS-DA Program").  *A.C.R. v. Noem*, 2025 WL 3228840, at *2.  The SIJS-DA Policy did not guarantee that an applicant would receive deferred action, but it did guarantee consideration for it, and it also created a "presumption in favor of deferred action."  *Id.*  Those who were granted deferred action could apply for employment authorization.  *A.C.R. v. Noem*, 2025 WL 3228840, at *2.

In June 2025, USCIS publicly issued a new policy statement rescinding automatic consideration of deferred action (and related employment authorization) for SIJS beneficiaries.  *A.C.R. v. Noem*, 2025 WL 3228840, at *3.  In November 2025, a district judge in the United States District Court for the Eastern District of New York court (i) held that this revocation violated the Administrative Procedure Act ("APA") and (ii) stayed the recission pursuant to section 705 of the APA.  *Id.* at *17.  USCIS is currently required under the court's order to conduct deferred-action adjudications pursuant to the SIJS-DA Policy.  *Id.*  USCIS has therefore resumed its automatic consideration of SIJS recipients for deferred action pursuant to the 2022 policy.

## C.    Factual Background

All stated facts are undisputed by either party.  Petitioner is a 21-year-old citizen of Guatemala who entered the United States without authorization on or about April 7, 2021, as a child of 15.  Pet., ¶ 2; Dawson Decl., ¶ 3.  The United States Customs and Border Protection ("CBP") encountered him near El Paso,

Texas and served him with Form I-200 ("Warrant for Arrest of Alien") and a Notice to Appear ("NTA"), charging him as inadmissible under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as "an alien present in the United States without being admitted or paroled." Dawson Decl., ¶¶ 3, 5. Because he was a minor, CBP gave Petitioner the opportunity to contact his father in Queens, New York and transferred him to the Department of Health and Human Services' Office of Refugee Resettlement ("ORR"). *Id.*, ¶¶ 3-4. Pursuant to the Trafficking Victims Protection Reauthorization Act of 2008, he was reunited with his father in New York on May 5, 2021. *Id.*, ¶ 4.

On July 27, 2022, ICE filed the NTA with the Executive Office for Immigration Review ("EOIR") to commence removal proceedings against Petitioner and mailed the NTA to ORR's listed address for Petitioner, in the care of his father. *Id.*, ¶¶ 7-8. Petitioner did not appear in Immigration Court on January 12, 2023, and the Immigration Judge adjourned his hearing to February 28, 2023. *Id.*, ¶ 9. Petitioner again did not appear, and the IJ ordered him removed *in absentia*. *Id.*, ¶ 11.

Petitioner filed an SIJ application with USCIS on March 20, 2025, which was granted on August 14, 2025. *Id.*, ¶ 12. Although Petitioner's SIJ status renders him eligible to become a lawful permanent resident, he cannot adjust his status until there is a visa available to him. *Id.*, ¶ 13. As of December 2025, visas are only

available to applicants who filed their SIJ applications on or before September 1, 2020. *Id.* Petitioner's deferred action review is currently pending. *Id.*, ¶ 12.

On January 2, 2026, Petitioner was taken into custody by ICE at the USCIS application support center office. *Id.*, ¶ 14. ICE served Petitioner with Forms I-205 ("Warrant of Removal"), I-229(a) ("Warning for Failure to Depart"), and I-294 ("the Notice of Order of Deportation"). *Id.*, ¶ 14. Petitioner is currently detained at the Delaney Hall Detention Facility in Newark, New Jersey. *Id.*, ¶ 15.

On January 3, 2026, Petitioner filed a motion to reopen with immigration court, and that motion is currently pending. *Id.*, ¶ 16; ECF No. 11 ("Reply"), at 2.

**D.    Procedural History**

Petitioner filed the instant habeas petition seeking release from custody. The Petition argues that detention of SIJ beneficiaries awaiting reopening or adjustment frustrates congressional intent, serves no legitimate regulatory purpose, and is punitive in nature. Pet., ¶ 26. The Petition contends that Petitioner's continued detention violates his substantive and procedural due process rights, as it is arbitrary and punitive. *Id.*, ¶¶ 27-28. Finally, the Petitioner argues that detaining Petitioner without permitting judicial review violates the Suspension Clause of the Constitution. *Id.*, ¶ 30.

On January 5, 2026, the Court issued an Order to Answer, preserving its jurisdiction; prohibiting transfer while the Petition and motion remained pending; and directing the parties to file a letter with details regarding ICE's authority to

7

detain Petitioner.  ECF No. 3 ("Order").  In their opposition papers, Respondents

invoke 8 U.S.C. § 1231(a) as the statutory authority governing Petitioner's

detention.  ECF No. 10 ("Opp'n") at 2.  Respondents argue that this Court lacks

jurisdiction to grant relief to Petitioner by operation of 8 U.S.C. § 1252(g).  *Id.* at 9-

15.  Respondents further represent that ICE has current travel documents for

Petitioner and is prepared to effectuate the removal order in 1-2 weeks.  Dawson

Decl., ¶¶ 18-19.

Petitioner, in his reply papers, contends that this Court has jurisdiction both

to order his release from detention and to grant other relief connected to custody,

including an order preventing his removal from the United States while his

deferred action review is pending.  Reply at 3-4.

The parties appeared before the Court on January 27, 2026, and, at the

Court's invitation, submitted supplemental briefing addressing the Suspension

Clause.

## LEGAL STANDARDS

Petitioner brings a petition for a writ of habeas corpus under 28 U.S.C.

§ 2241, which "authorizes a district court to grant a writ of habeas corpus whenever

a petitioner is 'in custody in violation of the Constitution or laws or treaties of the

United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28

U.S.C. § 2241(c)(3)).  "Federal courts have jurisdiction to hear habeas corpus claims

by non-citizens challenging the constitutionality of their detention."  *Lopez v.*

*Sessions*, No. 18-CV-4189 (RWS), 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018)

(citing *Demore v. Kim*, 538 U.S. 510, 516-17 (2003)).

## DISCUSSION

Respondents urge that the jurisdiction-stripping provision of 8 U.S.C. §

1252(g) divests the Court of jurisdiction to adjudicate this habeas petition to the

extent Petitioner seeks a stay of removal.  Opp'n at 9-15.  Respondents further

argue that, even were the Court to reach the merits of the Petition, Respondent's

SIJ status does not prevent his removal.  *Id.* at 7-9.  The Court concludes that

Section 1252(g)'s limited scope does not extend to the instant Petition.  Moreover,

Respondents' actions have violated Petitioner's constitutional right to due process.

Accordingly, the Petition will be granted.

### A.    Section 1252(g)

Section 1252(g) provides that "no court shall have jurisdiction to hear any

cause or claim by or on behalf of any alien arising from the decision or action by the

Attorney General to commence proceedings, adjudicate cases, or execute removal

orders against any alien under this chapter."  8 U.S.C. § 1252(g).  Despite the

potential sweep of this language, Section 1252(g) is not a "zipper" clause that

precludes judicial review of all cases involving removal.  *Reno v. Am.-Arab Anti-*

*Discrimination Comm.*, 525 U.S. 471, 482 (1999).  To the contrary, as the Supreme

Court explained in the seminal case of *Reno v. Am.-Arab Anti-Discrimination*

*Comm.*, "the provision applies only to three discrete actions that the Attorney

9

General may take:  her "decision or action" to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders."  *Id.* (emphasis added).

"Section 1252(g) is directed 'against a particular evil:  attempts to impose judicial constraints upon prosecutorial discretion.'"  *Ozturk v. Hyde*, 136 F.4th 382, 396 (2d Cir. 2025) (quoting *Reno*, 525 U.S. at 485 n.9).  Prior to the enactment of Section 1252(g), the Government's decision to defer action against certain aliens or classes of aliens, but to refuse to do so for others, had subjected it to claims of selective prosecution, due process, and equal protection in the courts.  *Reno*, 525 U.S. at 484-85.  Section 1252(g) was "designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations."  *Id.* at 485.

Section 1252(g) thus does not apply to the "many other decisions or actions that may be part of the deportation process," such as decisions to include particular "provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order," *Reno*, 525 U.S. at 482, or the decision to detain an individual, even when done as part of the removal process, *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025).

Although the Petition purports to challenge Petitioner's continued detention by ICE, none of his arguments go directly to the lawfulness of his detention.  He does not, for example, argue that ICE lacked statutory authority to take him into custody.  Nor could he.  It is undisputed that Petitioner is subject to a final order of removal entered *in absentia*.  Accordingly, 8 U.S.C. § 1231(a) authorizes Petitioner's

detention for the purpose of effectuating Petitioner's removal. *Zadvydas v. Davis*, 533 U.S. 678, 699-700 (2001).

Petitioner instead claims that "approval of an SIJ petition reflects a binding federal determination that the individual merits humanitarian protection and that return to the country of nationality is contrary to the individual's best interests." Pet., ¶ 23. Petitioner reasons that, because his removal is unlawful, his detention serves no legitimate "removal-related purpose." *Id.*, ¶ 25. Although he frames it as a challenge to his detention, Petitioner is effectively challenging the execution of his removal order. Indeed, Petitioner explicitly requests a temporary stay of removal pending an agency determination on his deferred action application in his reply papers. Reply at 3-4.[1]

A request for a stay of removal implicates the executive branch's decision to execute a final removal order and thus can fall with Section 1252(g)'s jurisdictional bar. *See, e.g.*, *Troy as Next Friend Zhang v. Barr*, 822 F. App'x 38, 39 (2d Cir. 2020) (summary order) (holding that Section 1252(g) precluded jurisdiction over habeas petition seeking a stay of removal on the grounds that the Government's decision to

---

[1] Petitioner insists that he is not seeking a "forbidden stay of removal," but rather an order preventing Respondents from "remov[ing] him in the immediate term in a manner that would moot judicial review and extinguish the agency adjudication that Respondents themselves admit is pending." Reply at 1. This is a meaningless distinction, as there is no "manner" in which Petitioner could be removed from the United States that would not have the effect of depriving him of his SIJ status.

execute removal order was retaliatory); *Sean B. v. Wolf*, No. 20-CV-550 (JGK), 2020 WL 1819897, at *1 (S.D.N.Y. Apr. 10, 2020) ("Courts in the Second Circuit have consistently held that 8 U.S.C. §§ 1252(a)(5) and (g) strip district courts of jurisdiction over requests to stay removal."); *Andoh v. Barr*, No. 19-CV-08016 (PAE), 2019 WL 4511623, at *4 (S.D.N.Y. Sept. 18, 2019) (finding the court lacked jurisdiction over petitioner's claim for a stay of removal pending resolution of the motion to reopen because, if successful, it "would have the effect of vacating his underlying order of removal"). Yet the fact that Petitioner does, contrary to his assertion, seek a stay of removal does not end the jurisdictional inquiry.

A number of district courts within the Second Circuit have reasoned that, given its narrow scope and its focus on preserving prosecutorial discretion, Section 1252(g) does not prohibit the exercise of jurisdiction over habeas petitions "seeking to challenge ICE's legal authority over a removal order, rather than its discretionary decisions regarding removal orders." *R.O.A. v. Edlow*, 805 F. Supp. 3d 565, 574 (D. Vt. 2025). Under this rationale, a habeas petition is permissible if it does not call into question "'why the Secretary chose to execute the removal order,' but [rather] 'whether the way Respondents acted accords with the Constitution and the laws of this country.' While the first question challenges ICE's discretion to execute a removal order, the second question asks whether the Constitution or other law deprives ICE of power over the removal order." *S.N.C. v. Sessions*, No. 18-CV-

7680 (LGS), 2018 WL 6175902, at *5 (S.D.N.Y. Nov. 26, 2018) (cleaned up); *see also You v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018).

The Courts of Appeals that have considered whether Section 1252(g) applies only to challenges to discretionary decision-making have arrived at disparate conclusions. *Compare Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("Anaya is not attacking the removal itself, as he does not challenge the validity of his removal order, or claim that the Attorney General should have exercised discretion to delay his removal.  Instead, he points out—correctly—that the Attorney General lacked the authority to execute the removal order . . . .") *and Enriquez-Perdomo v. Newman*, 54 F.4th 855, 865 (6th Cir. 2022) ("'Execute removal orders' contemplates removal orders that are subject to execution.  By definition, when a removal order is not subject to execution, government officials have no authority, discretionary or otherwise, to execute it."), *with E.F.L. v. Prim*, 986 F.3d 959, 965 (7th Cir. 2021) ("[T]he distinction between DHS's 'discretionary decisions' and its 'legal authority' to execute removal orders is illusory.") *and Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017) ("The statute . . .  makes no distinction between discretionary and nondiscretionary decisions.  So long as the claim arises from a decision to execute a removal order, there is no jurisdiction.").  The Second Circuit has yet to weigh in on this question.  In *Ragbir v. Homan*, a decision vacated by the Supreme Court on other grounds, the Second Circuit noted the Circuit split but declined to reach the question, as it found that the petition at issue had not

raised a challenge to the Government's legal authority.  923 F.3d 53, 64 & n.12 (2d

Cir. 2019), *cert. granted, judgment vacated sub nom. Pham v. Ragbir*, 141 S. Ct. 227

(2020).[2]

Despite the lack of binding authority, an examination of the statutory text

and relevant Supreme Court and Second Circuit precedent yields the inexorable

conclusion that Section 1252(g) only operates to divest the courts of jurisdiction over

challenges to the Government's discretionary decisionmaking.

Any analysis of this question must start with "a familiar principle of

statutory construction: the presumption favoring judicial review of administrative

action."  *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (quotation marks and

citation omitted).  That is, "when a statutory provision is reasonably susceptible to

divergent interpretation, we adopt the reading that accords with traditional

understandings and basic principles: that executive determinations generally are

subject to judicial review."  *Id.* (quotation marks and citation omitted).  This

presumption of reviewability applies equally in the immigration context.  *Id.*

---

[2] Ragbir had brought a selective enforcement challenge, claiming the execution of his removal order was in retaliation for his exercise of his First Amendment rights. 923 F.3d at 60-61.  On appeal, the Second Circuit held that the Government conduct being challenged was the discretionary decision to execute a valid final order of removal, which fell squarely within the jurisdictional limitations of Section 1252(g). *Id.* at 63-64.  The Second Circuit distinguished Ragbir's case from the Ninth Circuit's decision in *Arce* on the grounds that *Arce* involved a challenge to the Government's legal authority to effectuate removal; the Court declined to "express [an] opinion" as to the Ninth Circuit's reasoning.  *Id.* at 64.

Read in light of this presumption, the statutory text does not unambiguously preclude judicial review of any action arising from the effectuation of a removal order.  A challenge to a "decision or action by the Attorney General to . . . execute removal orders" does not necessarily encompass a challenge to the *authority* of the Government to act, or to the manner in which a removal is carried out.  *See, e.g.*, *Enriquez-Perdomo*, 54 F.4th at 862-63 (construing the term "removal orders" in Section 1252(g) to mean "*executable* removal orders—that is, existing and enforceable removal orders subject to execution").

The Supreme Court's decision in *Reno*, which instructs that Section 1252(g) must be read narrowly, also supports this conclusion.  525 U.S. at 482.  The Supreme Court examined the structure and text of the Illegal Immigration Reform and Immigrant Responsibility Act in its entirety and determined that, if Section 1252(g) were interpreted to widely preclude jurisdiction over all removal-related actions, other provisions of the statute would be rendered redundant or a nullity.  *Id.* at 482-87.  Limiting the scope of Section 1252(g), so that it is construed to protect only the "limited subset" of claims arising from discretionary decision-making, avoids interpretive anomalies and "makes sense of the statutory scheme as a whole."  *Id.* at 487.

This reading also accords with the Second Circuit's most recent consideration of Section 1252(g)'s scope in *Ozturk*.  In that case, the Second Circuit similarly emphasized the "narrow" reach of the provision and its origins in protecting the

exercise of prosecutorial discretion.  136 F.4th at 396.  Moreover, in cautioning that "[t]he government dramatically overstates the reach" of the jurisdictional bar, the Second Circuit cited its unpublished order in *Fulton v. Noem*, No. 25-194 (2d Cir. Apr. 30, 2025), for the proposition that a stay of removal was appropriate where the manner of removal was challenged, as that decision did not implicate "judicial constraints upon prosecutorial discretion."  *Id.* (citing *Reno*, 525 U.S. at 485 n.9). Given this reference in *Ozturk*, a closer examination of *Fulton* is in order.

The petitioner in *Fulton* filed a habeas petition seeking to enjoin his removal from the United States until the government demonstrated that it had arranged for him to receive dialysis in the country of removal.  *Fulton v. Mayorkas*, No. 25-CV-63 (JLS), 2025 WL 296051, at *2 (W.D.N.Y. Jan. 24, 2025).  The district court had denied the underlying habeas petition, holding that Section 1252(g) divested it of jurisdiction to grant a stay of removal.  *Id.* at *5.  On appeal, the Second Circuit granted a stay of removal pending appeal, finding that the petitioner was likely to succeed on the merits of his habeas petition.  *Fulton*, No. 25-194, Dkt. No. 34.1 at 2. In doing so, the Second Circuit rejected the proposition that Section 1252(g) bars all petitions that seek stays of removal.  *Id.*  The Second Circuit instead concluded that, "because Fulton challenges the manner of his removal, and not the discretionary decision to remove him, § 1252(g) likely does not deprive the district court of jurisdiction to hear his claims."  *Id.*

Although the order in *Fulton* has no precedential value, the citation in *Ozturk* is notable. At a minimum, it suggests that the Second Circuit would permit review of other removal cases that do not "impose judicial constraints upon prosecutorial discretion," as such review is outside the scope of the Section 1252(g) bar. *Ozturk*, 136 F.4th at 396.

Accordingly, the Court interprets Section 1252(g) as confined to the Attorney General's discretionary determination to effectuate a removal order. Such a reading "does not allow for judicial review of governmental decisions that Congress intended to shield from review" and thus "comports with Congress'[s] purpose in enacting it." *Enriquez-Perdomo*, 54 F.4th at 865. And because Petitioner challenges Respondent's authority, rather than discretion, to remove him in violation of his due process rights, his Petition does not fall within the narrow scope of that jurisdictional bar.

## B.    Merits

Having established jurisdiction to hear Petitioner's claims, the Court turns to their merits. Petitioner has also demonstrated that the execution of his final removal order at the present time would violate his due process rights. "The Due Process Clause covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). Where noncitizens are granted statutory rights by Congress, minimum due process rights attach to those statutory rights. *See Osorio-Martinez*, 893 F.3d at

172 (citing cases); *see also Augustin v. Sava*, 735 F.2d 32, 36 (2d Cir. 1984)

("Although aliens who petition for admission have no constitutional rights

regarding their applications, they do have such statutory rights as Congress grants,

[which, along with] federal regulations promulgated thereunder, afford certain

procedural and substantive entitlements to excludable aliens").  As the Third

Circuit persuasively found in *Osorio-Martinez*, the SIJ provisions of the INA evince

"a congressional intent to assist a limited group of abused children to remain safely

in the country with a means to apply for LPR status."  *Osorio-Martinez*, 893 F.3d at

168 (citation omitted).  SIJ status thus "reflects the determination of Congress to

accord those abused, neglected, and abandoned children a legal relationship with

the United States and to ensure they are not stripped of the opportunity to retain

and deepen that relationship without due process."  *Id.* at 170.

First and foremost, the statute provides a pathway for SIJ designees to

adjust status to that of lawful permanent resident while within the United States.

8 U.S.C. § 1255(a).  SIJ designees are deemed, for purposes of adjustment of status

to lawful permanent resident, to have been paroled into the United States.  8 U.S.C.

§ 1255(h)(1).  They are exempt from a host of grounds that would otherwise render

them inadmissible—including being found to be a "public charge," lacking a "valid

entry document," or having "willfully misrepresent[ed] a material fact" while

seeking admission into the United States.  *Compare id.* § 1182(a) (inadmissibility

provisions), *with id.* § 1255(h)(2)(A) (listing inadmissibility provisions to which SIJ recipients are not subject).

Congress clearly contemplated that SIJ designees would remain in the United States while awaiting adjudication of their adjustment of status applications. Congress conferred on SIJs access to federally funded educational programming, *see* 8 U.S.C. § 1232(d)(4)(A), and preferential status when seeking employment-based visas, *see id.* § 1153(b), while they await adjustment of status.

Perhaps most critically for Xol-Maas, Congress afforded SIJ designees procedural rights "to ensure they would not be stripped of SIJ protections without due process." *Osorio-Martinez*, 893 F.3d at 170-71. SIJ status may only be revoked for "good and sufficient cause." 8 U.S.C. § 1155. And pursuant to DHS's implementing regulations, revocation must be on notice. 8 C.F.R. § 205.2. The designee must be permitted an opportunity to challenge the revocation by offering evidence in opposition to the asserted ground for revocation. *Id.* The agency must provide a written decision that explains the "specific reasons for the revocation," which the designee will have an opportunity to appeal within the agency. *Id.* Judicial review of such revocation is also available under the APA. *See, e.g., Ghaly v. INS*, 48 F.3d 1426, 1434 n.6 (7th Cir. 1995).

In sum, SIJ designees have been granted by statute a clear set of rights, including eligibility to apply for adjustment to LPR status and protection against having their SIJ status revoked without a prescribed process. Minimum due

process rights automatically attach to these statutory and regulatory rights. "Yet each of these rights and protections would be summarily stripped from Petitioner upon execution of the order of removal." *Osorio-Martinez*, 893 F.3d at 179 (cleaned up); *accord Alfaro Herrera v. Baltazar*, No. 1:25-CV-04014-CNS, 2026 WL 91470, at *8 (D. Colo. Jan. 13, 2026); *Joshua M. v. Barr*, 439 F. Supp. 3d 632, 679 (E.D. Va. 2020). The fact that Petitioner's removal is predicated on a ground that the statute explicitly waives for SIJs, his inadmissibility, highlights the tension between Congressional intent and the executive branch's actions. *Compare* 8 U.S.C. § 1182(a)(6)(A) (inadmissibility for lack of admission, parole, or arrival at designated point of entry), *with id.* § 1255(h)(2) (listing section 1182(a)(6)(A), also known as INA § 212(a)(6)(A), among prior grounds for deportation no longer applying to SIJS beneficiary); Return, Ex. A (NTA listing Petitioner as subject to removal under INA § 212(a)(6)(A)); *id.*, Ex. D (Removal Order citing NTA).

In opposing the Petition, Respondents cite *Cortez-Amador v. Attorney General*, 66 F.4th 429 (3d Cir. 2023), but that decision is not to the contrary. In reviewing a petition for review from a final order of removal, the Third Circuit held that the petitioner's SIJ status did not render him admissible or exempt him from the removal provisions of the INA. *Id.* at 432-33. Yet the petitioner in that case had already been considered for, and denied, adjustment of status by the immigration court as a matter of equitable discretion, after the petitioner had been criminally charged with sexual assault of a minor under the age of 13 and pled

guilty to non-sexual child endangerment. *Id.* at 431. Indeed, in *Cortez-Amador*, the Third Circuit found *Osorio-Martinez* "distinguishable because [that decision] did not hold SIJS recipients are exempt from removal due to inadmissibility, but only that Congress intended to provide SIJS recipients with an opportunity to pursue adjustment of status." *Id.* at 433 n.12.

To be clear, an SIJ designee is not legally entitled to adjust status, as that is a discretionary determination which lies with the executive branch. *See Osorio-Martinez*, 893 F.3d at 175. Petitioner does, however, have due process rights in being afforded an opportunity to have his adjustment of status application adjudicated. Accordingly, Petitioner has established that his removal from the United States while he enjoys SIJ status but has yet to have the opportunity to apply for adjustment of status would violate due process.[3] And because the Government cannot, consistent with the Constitution, effectuate Petitioner's removal in the near term, his continued detention pursuant to 8 U.S.C. § 1231(a) likewise violates his due process rights.

## CONCLUSION

For the reasons stated herein, the Petition is GRANTED. The Court ORDERS Respondents to immediately release Petitioner from custody and to certify compliance with this order by 5:00 p.m. on February 19, 2026. Respondents are

---

[3] Indeed, Petitioner was at the USCIS application support center office when he was arrested by ICE. Dawson Decl., ¶ 14.

enjoined from removing Petitioner from the United States until such time as he has been provided the opportunity to apply for adjustment of status and that application is fully adjudicated.

The Clerk of Court is instructed to terminate all pending motions and to close the case.

SO ORDERED.

Dated:  February 18, 2026
         New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge